## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | | |
|---|---|---|
| **ROBERT R. YOUNG,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **2:18-cv-00320-JDL** |
| | ) | |
| **SHAW'S SUPERMARKETS, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Robert R. Young alleges in Count Three of his complaint (ECF No. 1-1) that his former employer, Shaw's Supermarkets, Inc., discharged him for reporting unsafe working conditions, in violation of the Maine Whistleblowers' Protection Act, 26 M.R.S.A. § 833(1)(B) (West 2020), and the Maine Human Rights Act, 5 M.R.S.A. § 4572 (West 2020).  In Counts Four and Five, Young asserts claims for intentional infliction of emotional distress and negligent infliction of emotional distress arising out of the same events.  Shaw's moves for summary judgment on these three counts (ECF No. 36).[1]  For reasons I will explain, Shaw's motion is denied as to Count Three and granted as to Counts Four and Five.

---

[1]  Young voluntarily dismissed Count One of the Complaint (ECF No. 32).  Shaw's does not move for summary judgment on Count Two, suggesting that it is no longer pending because it is "duplicative of Count [One]."  ECF No. 36 at 1 n.1.  However, the stipulation of dismissal as to Count One expressly stated that "[a]ll other Counts of the Complaint shall remain active and pending."  ECF No. 32 at 1.  Further, although Count One and Count Two both cite the same statute, they are not duplicative: Count One relies upon another statute as well, and Count Two is limited to claims "not expressly pled in Count [One]."  ECF No. 1-1 at 5.  Thus, Count Two remains pending.

## I. FACTUAL BACKGROUND

Robert Young began working for Shaw's as a grocery bagger in 1999.[2]  He was later promoted to the P.M. Closer position, which he held until Shaw's terminated his employment on August 20, 2016.  The parties dispute the reason for Young's termination.  Shaw's contends that it terminated Young because of his behavior during an interaction with a customer at the Shaw's Supermarket in Westbrook on August 14, 2016.  Young, on the other hand, contends he was discharged because he repeatedly complained to management about the lack of security staff in the Westbrook store.  I lay out the facts relating to both parties' contentions, beginning with those related to Shaw's explanation for terminating Young.

### A.      Shaw's Explanation for Young's Termination

Around 9:20 p.m. on August 14, 2016, Young was working in the frozen food aisle and was called to the front end of the store by the head cashier.  The cashier advised Young that she had refused the sale of alcohol to a young man who had a black eye and smelled of alcohol.  She further stated that the customer had made "some unnecessary comment to her" in response.

A little later, a second customer attempted to purchase the same alcohol.  The cashier thought the second customer might be associated with the first customer.  The cashier again called Young to the front of the store and stated that she was concerned about selling the alcohol to this second customer as well.  Young agreed and refused the sale.  Sometime later, the first customer asked a bystander to purchase the

---

[2]  I have considered all of Young's objections to Shaw's statement of undisputed material facts.  To the extent that I rely on evidence that Young asserts is inadmissible, I do so because I find Young's objection to be without merit.

alcohol for him, and the bystander declined. While these events were unfolding, Young went to the window overlooking the parking lot and saw a group of young men gathered around a white car. Young believed that the young men were exchanging money.

At around 10 p.m., the first customer approached Young in the soda aisle, holding a bottle of alcohol in both hands. The customer stated, "you're going to sell me this liquor because your cashier doesn't like me, and I'm not going through cash." Young responded that he didn't have to sell the customer anything. He pointed out that the customer had been refused once already and told the customer to put the bottle back. The customer then pulled out his cell phone and began recording the interaction with Young. At this point, the customer was holding the bottle of alcohol by its middle in one hand. Young later testified that he was afraid the customer might hit him with the bottle. Young repeated that he would not sell the alcohol to the customer and stated that he would call the police if the customer did not give him the bottle. When the customer did not comply, Young took hold of the top and bottom of the bottle and pulled it out of the customer's hand. The cashier then arrived at the aisle and stated that she had called 9-1-1. Hearing this, the customer turned and left the store, and Young and the cashier followed him out to the parking lot. The police arrived shortly thereafter but were unable to locate the customer.

The next day, August 15, the Westbrook store director called Linda del Pino, the Human Resources Manager, and informed her that a customer had complained about a physical and verbal altercation with Young. Del Pino then contacted Asset Protection Manager Richard DesFosses and asked him to investigate the complaint.

The Asset Protection department conducts investigations for theft, risk, associate conflicts, other human resource issues, and other situations in which "an area of the business needs information to make a decision." ECF No. 39 ¶ 26. Young was suspended during the investigation.

DesFosses prepared a report detailing his investigation into the customer complaint and his findings.[3] The report stated the following: On August 17, DesFosses visited the Westbrook store. He discussed the customer complaint with the store director and reviewed a written statement by a department manager who had received the complaint. He then reviewed the store video from August 14, which did not contain any footage of the interaction between Young and the customer. DesFosses also interviewed and considered written statements by both Young and the cashier who had called 9-1-1 during the incident. Finally, DesFosses spoke with the customer and watched the video that the customer had taken on his cell phone during the incident. According to DesFosses, the video on the customer's cell phone depicted Young saying, "get the fuck out of my store and take your cock-sucking friends with you." DesFosses did not obtain a copy of the cell phone video. Young testified that he does not recall whether he used foul language during the incident.

On August 20, Shaw's terminated Young's employment. Shaw's Director of Labor Relations and Employment Law, Brian Fitzsimmons, testified that he

---

[3] Young objects to the admission of DesFosses' report in its entirety on hearsay grounds. The report is not hearsay because Shaw's does not offer it to prove the truth of the matter asserted therein, i.e., that Young "engaged in misconduct." *Tang v. Citizens Bank, N.A.*, 821 F.3d 206, 221 n.15 (1st Cir. 2016) (quoting *Ramírez Rodríguez v. Boehringer Ingelheim Pharm., Inc.*, 425 F.3d 67, 77 (1st Cir. 2005)). Rather, Shaw's offers the report to prove that those responsible for deciding to discharge Young "had reason, based on a thorough investigation, to believe" that he had engaged in misconduct. *Id.* (quoting *Ramírez Rodríguez*, 425 F.3d at 77). Thus, DesFosses' report is admissible in its entirety to prove the basis for and motivation behind the termination decision. *Cf. id.*

reviewed DesFosses' report and decided to terminate Young's employment because Young "engaged with the customer rather than calling the police."  ECF No. 39 ¶ 42. Shaw's suggests that this rationale is consistent with its policies, as Shaw's allowed Young and other associates to carry their personal cellphones during their shifts so that they could call 9-1-1 if there was an emergency.  Young had called the police about shoplifters before and had not been disciplined for doing so.

In addition to the unwritten policy allowing associates to call 9-1-1, Shaw's has a written policy that prohibits associates from attempting to physically restrain or otherwise touch a customer suspected of shoplifting.  The shoplifting policy further instructs that if a suspect is uncooperative or verbally or physically abusive, associates should let the suspect leave the store.  Shaw's also has a "restricted sales" policy, which requires associates to refuse the sale of alcohol to anyone who is visibly intoxicated.  Neither the shoplifting policy nor the restricted sales policy instructs associates to call the police when a visibly intoxicated customer repeatedly attempts to purchase alcohol after being refused.

The Human Resources Manager, del Pino, also reviewed DesFosses' report and was involved in the decision to terminate Young.  She testified that Young was terminated because he used profanity on the sales floor.  Shaw's asserts that profane language violates its "courtesy, dignity, and respect" policy, which prohibits "quarreling or fighting with, threatening, verbally abusing, or unlawfully discriminating against or harassing . . . customers."  ECF No. 39 ¶ 43.  Shaw's employee handbook states that violating this policy could result in "immediate termination from employment."  *Id.*  Both Fitzsimmons and DesFosses testified that

they were not aware of any situation in which a person used the word "fuck" on the sales floor and retained their employment.

## B.   Young's Explanation for His Termination

For his part, Young asserts that his employment was terminated because he repeatedly complained to management about the lack of security staff in the Westbrook store and was "a pain in their ass."  ECF No. 39 ¶ 54.  Young made his first general complaint about under-staffing on May 19, 2006, when he wrote to his store manager that the low number of closing-shift workers made it difficult to provide quality customer service.  This written complaint did not mention any safety or security concerns.  Young did not submit any complaints in writing after May 2006, and he testified that he stopped raising the issue because Shaw's was not responsive.  However, Young also testified that he verbally reported security concerns related to insufficient staffing and the lack of loss-prevention staff to associates and managers during almost every shift he worked between 2006 and his termination in 2016, as well as during his performance reviews.  He further testified that he discussed these security concerns with DesFosses on multiple occasions, though he could not recall any occasion in particular other than his interview with DesFosses on August 17, 2016.  There is no evidence showing that Young had previously been disciplined for raising security concerns while he was employed by Shaw's.

## II.  LEGAL ANALYSIS

Summary judgment is granted when the moving party shows that "there is no genuine dispute as to any material fact" and that it "is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is material if "its existence or

nonexistence has the potential to change the outcome of the suit." *Rando v. Leonard*, 826 F.3d 553, 556 (1st Cir. 2016) (quoting *Borges ex rel. S.M.B.W. v. Serrano-Isern*, 605 F.3d 1, 5 (1st Cir. 2010)).   An issue is genuine if "the evidence of record permits a rational factfinder to resolve it in favor of either party." *Id.* (quoting *Borges*, 605 F.3d at 4).   The facts in the record are construed in the light most favorable to the nonmoving party, and all reasonable inferences are drawn in favor of the nonmoving party. *See Braga v. Genlyte Grp., Inc.*, 420 F.3d 35, 38 (1st Cir. 2005).

## A.     Maine Whistleblowers' Protection Act

Shaw's moves for summary judgment on Count Three of Young's complaint, which alleges violations of the Maine Whistleblowers' Protection Act, 26 M.R.S.A. § 833(1)(B) ("MWPA"), and the Maine Human Rights Act, 5 M.R.S.A. § 4572.   The Maine Human Rights Act "prohibits employers from discriminating against employees because of actions protected under the [MWPA]." *Galouch v. Dep't of Prof'l & Fin. Regulation*, 114 A.3d 988, 992 (Me. 2015) (quoting *Currie v. Indus. Sec., Inc.*, 915 A.2d 400, 404 (Me. 2007)).   Thus, the Maine Human Rights Act "is the source of an employee's 'right of action,'" but "the requirements that must be met for an action to be afforded protection stem from the [MWPA]." *Harrison v. Granite Bay Care, Inc.*, 811 F.3d 36, 46 n.12 (1st Cir. 2016) (quoting *Costain v. Sunbury Primary Care, P.A.*, 954 A.2d 1051, 1053 & n.2 (Me. 2008)).

"A claim for violation of rights established under the [MWPA] consists of three elements: (1) that the employee engaged in activity protected by the [MWPA]; (2) that the employer imposed adverse employment action against the employee; and (3) that there was a causal connection between the protected activity and the adverse

employment action." *Cormier v. Genesis HealthCare LLC*, 129 A.3d 944, 948 (Me. 2015). Shaw's asserts that it is entitled to summary judgment because the undisputed facts show that Young did not engage in protected activity and that, even if he had, such activity was not causally connected to his termination.

### 1. Protected Activity

Shaw's does not dispute that Young reported concerns related to insufficient staffing through a written complaint in May 2006, verbal complaints to managers and associates during his shifts and performance reviews between 2006 and 2016, and at least one verbal complaint to DesFosses specifically. However, Shaw's argues that none of these reports constitute protected activity under the MWPA.

The MWPA provides that an employee engages in protected activity if he, "acting in good faith, . . . reports to the employer . . . , orally or in writing, what [he] has reasonable cause to believe is a condition or practice that would put at risk the health or safety of that employee or any other individual." 26 M.R.S.A. § 833(1)(B). "Although this provision is not triggered by every complaint that relates to safety, it protects employees who, in good faith, make safety-related complaints when the employee reasonably believes that a dangerous condition or practice exists." *Cormier*, 129 A.3d at 948–49 (citing *Stewart-Dore v. Webber Hosp. Ass'n*, 13 A.3d 773, 776 (Me. 2011)). "A complaint is made in good faith if the employee's motivation is to stop a dangerous condition." *Id.* at 949 (citing *Stewart-Dore*, 13 A.3d at 776). "A complaint is supported by reasonable cause when the employee has a subjective and objectively reasonable belief that a dangerous condition or practice exists." *Id.* (citing *Stewart-Dore*, 13 A.3d at 776).

8

Shaw's contends, and Young does not dispute, that Young's written complaint in May 2006 was not protected activity because it did not mention any health or safety risks arising out of insufficient staffing but merely asserted that insufficient staffing was causing the quality of customer service to suffer. Shaw's argues that Young's verbal complaints are similarly unprotected because they related to customer service, not security. However, Young testified that he verbally reported security concerns caused by insufficient staffing during performance reviews and almost every shift until his employment was terminated in 2016, stating that "it's not safe . . . to have just one elderly male in a store and two young girls, for example, up front at 10:00 at night in this neighborhood." ECF No. 43 ¶ 71.

Shaw's suggests that this testimony cannot be credited because Young also testified directly to the contrary, stating that he stopped complaining about insufficient staffing soon after he made his written complaint in 2006. A direct contradiction in the plaintiff's own testimony can sometimes support a finding that there is no genuine factual issue for trial. *See Pina v. Children's Place*, 740 F.3d 785, 799 (1st Cir. 2014). But Young asserts that his testimony, viewed in context, is not contradictory. He contends that he stopped complaining about insufficient staffing as it related to customer service around 2006 but continued reporting his security concerns about insufficient staffing almost every shift until he was terminated in August 2016. Drawing all reasonable inferences in Young's favor, I find that Young's testimony is competent evidence tending to show that he reported concerns about store security repeatedly during his shifts and performance reviews prior to his termination. The alleged contradiction goes to the weight of that evidence, which is

not to be evaluated at the summary judgment stage. *See Burns v. Johnson*, 829 F.3d 1, 8 (1st Cir. 2016) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).

Young also testified that he had several conversations with DesFosses about the lack of security staff between 2010 and 2016. Shaw's attempts to cast doubt on this testimony as well, pointing out that Young could not recall any specific conversations of this sort other than his interview with DesFosses on August 17, 2016. But this evidence bears on the credibility of Young's testimony, which is to be resolved at trial rather than on summary judgment. *See Carlson v. Univ. of New England*, 899 F.3d 36, 43 (1st Cir. 2018) (citing *Town of Westport v. Monsanto Co.*, 877 F.3d 58, 66 (1st Cir. 2017)). Thus, there is a genuine dispute precluding summary judgment as to whether Young engaged in protected activity by verbally reporting his security concerns to DesFosses and others repeatedly until his employment was terminated in 2016. Accordingly, I do not reach the additional question of whether Young's statements during his interview with DesFosses on August 17, 2016, standing alone, constitute protected activity.

### 2. Causal Connection

Shaw's further asserts that summary judgment is warranted because Young cannot demonstrate a causal connection between the alleged protected activity—his complaints about security—and his termination. "A causal connection exists when the alleged retaliation 'was a substantial, even though perhaps not the only, factor motivating' the adverse employment action." *Brady v. Cumberland Cty.*, 126 A.3d 1145, 1151 (Me. 2015) (quoting *Fuhrmann v. Staples Office Superstore E., Inc.*, 58 A.3d 1083, 1093 (Me. 2012)). Thus, a plaintiff's MWPA claim can survive summary

10

judgment if "the record as a whole would allow a jury to reasonably conclude that the adverse employment action was motivated at least in part by retaliatory intent." *Theriault v. Genesis HealthCare LLC*, 890 F.3d 342, 350 (1st Cir. 2018) (quoting *Brady*, 126 A.3d at 1158).

Shaw's argues that Young cannot meet this burden because the record contains no evidence that Fitzsimmons, the Director of Labor Relations and Employment Law, knew about Young's alleged security complaints, and "one cannot have been motivated to retaliate by something [he] was unaware of." *Cormier*, 129 A.3d at 950 (quoting *Medina–Rivera v. MVM, Inc.,* 713 F.3d 132, 139 (1st Cir. 2013)). However, a reasonable jury can infer that decision-makers were aware of an employee's complaints if the complaints "could or should have been reported to" them. *Id.* at 951. Here, Young testified that he complained about the lack of security staff to managers or other employees during almost every shift between 2006 and 2016. According to this testimony, Young made hundreds or even thousands of complaints to multiple people about store security over a ten-year period. A reasonable jury could infer from this testimony that someone who had received a complaint from Young would have relayed it to either Fitzsimmons or del Pino, who were both involved in the decision to terminate Young's employment.

An inference of knowledge also arises from Young's alleged complaints to DesFosses because "communication channels involving the subject of [the] protected complaints . . . would naturally allow those complaints to reach the decision-makers." *Brady*, 126 A.3d at 1151. In *Brady*, the plaintiff complained to two other employees that he believed an investigation was being mishandled. *Id.* at 1147–48, 1153. Those

11

two employees were working on the investigation at issue and were reporting directly to the supervisor who later decided to terminate the plaintiff's employment. *Id.* at 1153. Based on these facts, the court held that a reasonable jury could infer that at least one of the employees "would have mentioned" the plaintiff's complaints to the supervisor in the course of the investigation. *Id.* Here, like the plaintiff in *Brady*, Young alleges that he complained to DesFosses about store security on multiple occasions and that he reiterated his security concerns to DesFosses during the investigation into the August 14 incident. DesFosses worked with del Pino on the investigation and reported the results of the investigation to both del Pino and Fitzsimmons. Thus, as in *Brady*, a reasonable jury could infer that DesFosses would have shared Young's history of complaining about store security with either del Pino or Fitzsimmons in the course of the investigation.

Though a decision-maker's knowledge of protected activity alone does not establish a retaliatory motive, a plaintiff can generate a genuine dispute of material fact as to retaliatory motive by producing evidence of knowledge along with evidence that his termination was close in time to his last complaint. *See Cormier*, 129 A.3d at 951−52. Here, based on the continuous nature of Young's alleged protected activity, a reasonable jury could infer that Young's termination was close in time to his last protected complaint and thus conclude that his termination was partially motivated by retaliatory animus. Shaw's argues that the allegedly continuous nature of Young's complaints establishes the absence—not the presence—of retaliatory animus, as Young was never disciplined for any of his complaints in the ten years before his termination. But weighing the evidence and choosing among competing

12

reasonable inferences are tasks for the jury at trial, not the judge ruling on a motion for summary judgment. *See Burns*, 829 F.3d at 8 (quoting *Anderson*, 477 U.S. at 249). Thus, I am not persuaded that Shaw's is entitled to summary judgment on this basis.

Further, Young has produced evidence tending to show that Shaw's proffered reasons for his termination were pretextual, which is relevant to whether his termination was causally connected to his alleged protected activity. *See Brady*, 126 A.3d at 1151−53. Shaw's asserts that Young's employment was terminated because of his behavior during his interaction with the customer on August 14, 2016. Fitzsimmons testified that he decided to terminate Young because Young "engaged with the customer rather than calling the police." ECF No. 43 ¶ 67. Additionally, del Pino testified that Young was terminated because he used profanity on the sales floor in violation of Shaw's "courtesy, dignity, and respect" policy.

"A plaintiff may show pretext by establishing 'weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons' for the challenged employment action." *Theriault*, 890 F.3d at 353 (quoting *Cookson v. Brewer Sch. Dep't*, 974 A.2d 276, 282 (Me. 2009)). Young suggests that his failure to call the police was not a legitimate reason to terminate him, pointing out that the only policy that required employees to call the police instead of engaging with customers concerned shoplifters, not uncooperative and visibly intoxicated customers. Young also challenges the allegation that he was terminated for using profanity on the sales floor. Young points out that the only evidence that he used profanity is DesFosses' account of a cell phone video that was allegedly recorded by the intoxicated customer. Young contends that Fitzsimmons

and del Pino were not justified in relying on this evidence because the purported video was not shown to them, corroborated by witness statements, or produced in evidence. Young further contends that even if they were justified in believing he used profanity, termination was a disproportionate response under the circumstances, given his testimony that he was genuinely afraid for his safety at the time. Based on Young's contentions, a reasonable jury could find "weaknesses" or "implausibilities" in Shaw's proffered reasons for terminating Young's employment that support an inference of pretext. *Theriault*, 890 F.3d at 353 (quoting *Cookson*, 974 A.2d at 282).

Viewing all the evidence recounted above in the light most favorable to Young, I conclude that there is a genuine dispute of material fact regarding the causal connection between Young's termination and alleged protected activity. Thus, summary judgment is not warranted on the MWPA claim stated in Count Three of Young's complaint.

## B.   Emotional Distress Claims

Shaw's also moves for summary judgment on Count Four, intentional infliction of emotional distress, and Count Five, negligent infliction of emotional distress. Because both counts arise out of Young's termination, they fail as a matter of law. In the context of intentional infliction of emotional distress, "employment terminations—even baseless, discriminatory and/or humiliating ones—have been held as a matter of law to constitute an insufficient predicate for a claim against an employer." *Berry v. WorldWide Language Res., Inc.*, 716 F. Supp. 2d 34, 53 (D. Me. 2010) (quoting *Gavrilovic v. Worldwide Language Res., Inc.*, No. Civ. 05-38-P-H, 2005 WL 3369155, at *28 (D. Me. Dec. 8, 2005)).

The result is the same in the context of negligent infliction of emotional distress.  "The claim of negligent infliction of emotional distress requires the existence of a 'special relationship' that creates a duty between the actor and the person who is emotionally harmed."  *Fisk v. Mid Coast Presbyterian Church*, No. 2:16-cv-00490-JDL, 2017 WL 1755950, at *8 (D. Me. May 4, 2017) (quoting *Curtis v. Porter*, 784 A.2d 18, 25 (Me. 2001)).  "The employer-employee relationship does not qualify as a special relationship for purposes of negligent infliction of emotional distress."  *Id.* (citing *Berry*, 716 F. Supp. 2d at 52).

Therefore, I conclude that Shaw's is entitled to summary judgment on Counts Four and Five.[4]

### III. CONCLUSION

For the foregoing reasons, Shaw's motion for summary judgment (ECF No. 36) is **DENIED in part**, as to Count Three, and **GRANTED in part**, as to Counts Four and Five.

**SO ORDERED.**

**Dated this the 13th day of May, 2020.**

_____/s/ JON D. LEVY_____
**CHIEF U.S. DISTRICT JUDGE**

---

[4]  Accordingly, I need not resolve Shaw's alternative argument that the claims in these Counts are barred by the Maine Workers' Compensation Act, 39-A M.R.S.A. § 104 (West 2020).

15